UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EARL NELSON,

        Plaintiff,

v.                                        Case No. 18-C-183

ARTHUR OKORO,

        Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On February 2, 2018, *pro se* Plaintiff Earl Nelson, who was an inmate at the Milwaukee County House of Correction (MCHOC) at the time the alleged incident occurred[1], filed this action under 42 U.S.C. § 1983, alleging that Defendant Lieutenant Arthur Okoro exposed him to human waste in violation of the Eighth Amendment. The court screened Nelson's amended complaint on May 8, 2018, and allowed him to proceed on his claim for deliberate indifference against Okoro. ECF No. 19. Currently before the court is Okoro's motion for summary judgment. ECF No. 35. For the reasons that follow, Okoro's motion will be granted and the case will be dismissed.

### BACKGROUND

Because Nelson did not respond to the motion for summary judgment, Okoro's proposed findings of fact (ECF No. 36) are deemed admitted for the purposes of summary judgment. *See Smith*

---

[1] Nelson submitted a letter to the court stating that he was going to be released on October 23, 2018, and that he would provide the court new contact information within a week of his release. ECF No. 43. As of the date of this order, the court has not received updated contact information from Nelson nor any other filings.

*v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); Civil L.R. 56(b)(4) ("The Court will deem uncontroverted statements of material fact admitted solely for the purpose of deciding summary judgment.").

Nelson was an inmate in Dorm K6 of the MCHOC on January 9, 2018. That evening, around 8:00 p.m., an inmate defecated in the shower and smeared a small amount of feces into the drain. Upon learning of the condition of the shower prior to the start of his shift, Okoro informed the dorm that phone privileges would be lost the next day if the shower was not cleaned up by time he completed roll call. Okoro was unaware that the dorm's soaps were empty at the time, but knew that the dorm had access to gloves, a mop, and a bucket for use in cleaning of the dorm. Okoro did not believe that his order would have placed any of the inmates in a situation that exposed them to a substantial risk of serious harm to health or safety, and intended for the inmate porters to ultimately clean the shower. Okoro stated that his intent was to identify the specific inmate who was responsible.

Nelson, along with at least five other inmates, volunteered to clean up the shower. Nelson was provided latex gloves, rags, a mop, and a bucket of water to use in the cleanup. Nelson claimed he volunteered to clean the shower because he was expecting a phone call from his lawyer the next day and did not want to lose his phone privileges. Nelson did not receive a phone call from his lawyer the next day and no call from his lawyer was actually scheduled for that day.

At his deposition, Nelson claimed that feces came in contact with his arm while he was on the ground scrubbing. Nelson was not able to articulate how much feces got on his arm, provide any description of the substance that got on his arm, or definitively state that it was feces that splashed onto his arm. Upon noticing the substance on his arm, Nelson went and grabbed his personal shampoo and cleaned off his arm. The maximum amount of time the substance was on his arm was forty seconds.

2

Nelson never mentioned getting feces on his arm in the grievances he filed or in his complaints. Nelson never sought medical or mental health treatment for his claimed injuries and has not claimed any physical injury as a result of the January 9, 2018 incident.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

"Jail officials violate the Eighth Amendment if they are deliberately indifferent to adverse conditions that deny 'the minimal civilized measure of life's necessities' . . . ." *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Prison conditions may be unconstitutionally unacceptable if they "pose a 'substantial risk to inmate health or

3

safety.'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Farmer*, 511 U.S. at 837); *but see Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 666 (7th Cir. 2012) ("prison conditions may be uncomfortable, even harsh, without being inhumane"). "Prison officials violate their constitutional responsibility to provide inmates with the minimal necessities of life when they disregard over a significant period an inmate's request to be relieved from exposure to human feces." *Cobian v. McLaughlin*, 717 F. App'x 605, 611 (7th Cir. 2017). This is because "[e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* [*v. Brennan*, 511 U.S. 825 (1994)] and the more general standards of dignity embodied in the Eighth Amendment." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). Conditions of confinement in a jail or prison violate the Eighth Amendment's prohibition on cruel and unusual punishment when "(1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results 'in the denial of "the minimal civilized measure of life's necessities,"' and (2) where prison officials are deliberately indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer*, 511 U.S. at 834).

Simply put, Okoro did not deprive Nelson of the minimal necessities of life. Okoro did not force Nelson to clean up human waste, Nelson volunteered. Although he was not provided soap, Nelson was provided with adequate supplies—latex gloves, rags, a mop, and a bucket of water—such that he was not required to come in direct unprotected contact with the human waste he was cleaning up. Nelson was only exposed to human waste during this single incident for a very brief period of time, unlike cases where the exposure to human waste was prolonged and continuous such that it supported an Eighth Amendment violation claim. *Cobian v. McLaughlin*, 717 Fed. App'x 605 (7th Cir. 2017) (exposure to fecal matter spread around segregation cell for a month); *Johnson v. Pelker*, 891 F.2d

4

136 (7th Cir. 1989) (exposure to fecal matter spread on walls of segregation cell for three days without running water and denied access to cleaning supplies). Further, Nelson's own testimony does not support his allegation that he got fecal matter on his arm:

> Q: Tell me how much feces you actually got on your arm.
> A: I don't remember.
>
> Q: Bigger than a dime?
> A: I don't remember.
>
> Q: Smaller than a dime?
> A: I answered that question just now.
>
> Q: So you have no idea how much you got on you. Could you see it?
> A: Yes
>
> Q: So it was big enough that you could actually see feces on yourself?
> A: I could tell you that -- I could tell you that I believe that I was coerced into cleaning up someone else's feces by your client. I can tell you that. That's it.
>
> Q: Well, that doesn't answer my question.
> A: That's the best answer I can give you.
> ...
> Q: I'm asking you to describe it.
> A: Let me explain it to you . . . When I went in, something splashed on me as I was cleaning, went, wiped it off, washed it off, and that's that. Now, can we get on to the next question?
>
> Q: So you don't know if it was water or actual feces that splashed on you, correct?
> A: I answered that question already.
>
> Q: Well, I don't think you did.
> A: That's as good as you're going to get.

Nelson Dep., ECF No. 40-3 at 26:7-28:1. As a result, even viewing the facts in a light most favorable to Nelson, the court is convinced that Okoro did not violate Nelson's Eighth Amendment rights and Nelson's claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Okoro's motion for summary judgment (ECF No. 35) is **GRANTED**. The Clerk is directed to enter judgment dismissing the case with prejudice.

**SO ORDERED** this  26th  day of November, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court